HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
KRISTA L. BAUGHMAN (SBN: 264600)
kbaughman@dhillonlaw.com
GREGORY R. MICHAEL (SBN: 306814)
gmichael@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Plaintiffs Young America's Foundation
and Berkeley College Republicans

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **YOUNG AMERICA'S FOUNDATION,** a Tennessee nonprofit corporation; and **BERKELEY COLLEGE REPUBLICANS**, a student organization at the University of California, Berkeley,<br><br>            Plaintiffs,<br><br>            v.<br><br>**JANET NAPOLITANO,** in her official capacity as President of the University of California; **NICHOLAS B. DIRKS**, individually and in his official capacity as Chancellor of University of California, Berkeley; **STEPHEN C. SUTTON**, individually and in his official capacity as Interim Vice Chancellor of the Student Affairs Division of University of California, Berkeley; **JOSEPH D. GREENWELL**, individually and in his official capacity as Associate Vice Chancellor and Dean of Students of University of California, Berkeley; **MARGO BENNETT**, in her official capacity as Chief of Police of University of California Police Department, at Berkeley; **ALEX YAO**, individually and in his official capacity as Operations Division Captain of University of California Police Department, at Berkeley; and **LEROY M. HARRIS**, individually and in his official capacity as Patrol Lieutenant of University of California Police Department, at Berkeley,<br><br>            Defendants. | Case Number:<br><br>**VERIFIED COMPLAINT FOR INJUNCTIVE, DECLARATORY, and MONETARY RELIEF PURSUANT TO 42 U.S.C. § 1983**<br><br>**JURY TRIAL DEMANDED** |



Complaint

Case No.

Plaintiffs Young America's Foundation ("YAF") and Berkeley College Republicans ("BCR") (collectively, "Plaintiffs"), bring this action against University of California, Berkeley ("UC Berkeley" or the "University") officials Janet Napolitano, Nicholas B. Dirks, Stephen C. Sutton, and Joseph D. Greenwell, and University of California Police Department ("UCPD") officials Margo Bennett, Alex Yao, and Leroy M. Harris (collectively, "Defendants"), for declaratory and injunctive relief following Defendants' discriminatory application of a policy to restrict conservative speech on the UC Berkeley campus, in violation YAF and BCR's constitutional rights to free speech, due process, and equal protection under the law.

## INTRODUCTION

1.      This case arises from efforts by one of California's leading public universities, UC Berkeley – once known as the "birthplace of the Free Speech Movement" – to restrict and stifle the speech of conservative students whose voices fall beyond the campus political orthodoxy. Though UC Berkeley promises its students an environment that promotes free debate and the free exchange of ideas, it had breached this promise through the repressive actions of University administrators and campus police, who have systematically and intentionally suppressed constitutionally-protected expression by Plaintiffs (and the many UC Berkeley students whose political viewpoints align with Plaintiffs), simply because that expression may anger or offend students, UC Berkeley administators, and/or community members who do not share Plaintiffs' viewpoints.

2.      Defendants engage in a pattern and practice of enforcing a recently adopted, unwritten and unpublished policy that vests in University officials the unfettered discretion to unreasonably restrict the time, place, and manner of any campus event involving "high-profile speakers" – a term that is wholly undefined, and that has enabled Defendants to apply this policy in a discriminatory fashion, resulting in the marginalization of the expression of conservative viewpoints on campus by any notable conservative speaker. Defendants freely admit that they have permitted the demands of a faceless, rabid, off-campus mob to dictate what speech is permitted at the center of campus during prime time, and which speech may be marginalized, burdened, and regulated out of its very existence by this unlawful heckler's veto.



Complaint

Case No.

3.      Defendants' discriminatory imposition of curfew and venue restrictions has resulted in the cancellation of two speaking engagements featuring prominent conservative speakers in the month of April, 2017. First, BCR was forced to cancel a scheduled April 12, 2017 speaking engagement by David Horowitz, a widely acclaimed conservative writer, after the University first demanded that Horowitz speak before 3 p.m. in the afternoon, at a time when students are in class and most are unable to attend, and then demanded that the speech take place in a room on a separate campus that is more than one mile from the main campus center (so far away, in fact, that it even has its own track facilities). Then, less than two weeks later, after weeks of discussion, the University unilaterally canceled a speaking engagement by Ann Coulter, a nationally renowned New York Times bestselling author and conservative political commentator, which was previously scheduled to take place on campus on April 27, 2017.

4.      In the ensuing national firestorm of criticism, the University partially retracted its cancellation of the Coulter event, offering to allow Ms. Coulter to speak the following week, on May 2, 2017 – during a period referred to by the University as a "dead week," in which no classes are held, and far fewer students are on campus due to final exams the week following – but still insisted that the event would be subject to a 3:00 p.m. curfew and unspecified venue restrictions. Meanwhile, Defendants freely permitted the expression of non-conservative viewpoints by notable, liberal speakers addressing the same contentious topic Ms. Coulter planned to address – illegal immigration –  during the same month, including Vincente Fox Quesada, the former President of Mexico, and Maria Echaveste, a former presidential advisor and White House Deputy Chief of Staff to President Bill Clinton.

5.      By imposing an unconstitutionally vague policy concerning so-called "high-profile speakers," and selectively applying that impermissibly vague policy to burden or ban speaking engagements involving the expression of conservative viewpoints, Defendants have deprived YAF and BCR of their constitutional rights to free speech, due process, and equal protection. Accordingly, YAF and BCR seek temporary and permanent injunctive relief to prevent Defendants from continuing to muzzle Plaintiffs' constitutionally-protected speech, and to enjoin the Defendants' transparent attempts to stifle political discourse at UC Berkeley. Plaintiffs also seek

3

damages from each Defendant sued in his or her individual capacity.

**JURISDICTION AND VENUE**

6.      This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of YAF and BCR's free speech, due process, and equal protection rights under the First and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7.      This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief under 28 U.S.C. § 1343(3); the requested damages under 28 U.S.C. § 1343(3); and attorneys' fees and costs under 42 U.S.C. § 1988.

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391, because a substantial part of the acts or omissions giving rise to the claims for relief occurred in or were directed toward this District, and each of the Defendants is subject to the personal jurisdiction of this Court.

9.      This Court has personal jurisdiction over each of the Defendants, because each of the Defendants is domiciled in the State of California, has sufficient minimum contacts with California, and/or otherwise has intentionally availed himself or herself of significant benefits provided by the State of California, rendering the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

**INTRADISTRICT ASSIGNMENT**

10.      This Action is properly assigned to the San Francisco or Oakland Divisions of the Court, as the conduct giving rise to this dispute occurred in Alameda County, California.

**PARTIES**

11.      Plaintiff Young America's Foundation is a Tennesse nonprofit corporation whose mission is to educate the public on the ideas of individual freedom, free enterprise, traditional values, and leadership – hallmarks of conservative values. YAF has sponsored students and student groups on the UC Berkeley campus over the course of several years, including BCR, by providing these students and groups with the funding and logistical support needed to host prominent conservative speakers on campus. YAF has sponsored many speaking events at UC Berkeley in past years, including one such event in 2016 featuring renowned conservative political commentator and

Complaint                                                                                                    Case No.

DILLON LAW GROUP INC.

author Ben Shapiro, and its efforts have brought numerous other notable conservatives to share their viewpoints with students and the public at UC Berkeley.

12.    Plaintiff Berkeley College Republicans is a Registered Student Organization at the University of California, Berkeley, in operation for several decades. According to an email sent by UC Berkeley Vice Chancellor Stephen C. Sutton to BCR member Naweed Tahmas, copying Joseph Greenwell and UCPD Captain Yao, on or around April 19, 2017, BCR is "independent from the University, and [has] the right to invite whoever they'd like to speak [on campus] . . . ." A true and correct copy of this email, with personal contact information redacted, is attached hereto as **Exhibit A**.

13.    Defendant Janet Napolitano ("Napolitano") is the President of the University of California. According to UC Board of Regents Standing Order 100, "[t]he President shall be the executive head of the University and shall have full authority and responsibility over the administration of all affairs and operations of the University . . . ." Napolitano ultimately is responsible for all policies enacted and enforced at UC Berkeley, including the policies challenged herein. She acted under color of state law, and is sued in her official capacity.

14.    Defendant Nicholas B. Dirks ("Dirks") is the Chancellor of UC Berkeley, and is UC Berkeley's chief executive officer, responsible for UC Berkeley's administration and policy-making, and has ultimate authority to approve the policies and procedures challenged herein that were applied to deprive BCR and YAF of their constitutional rights. Dirks acted under color of state law, and is sued in his official and personal capacities.

15.    Defendant Stephen C. Sutton ("Sutton") is the Interim Vice Chancellor of the Student Affairs Division, at UC Berkeley. Sutton acted under color of state law, and is sued in his official and personal capacities.

16.    Defendant Joseph D. Greenwell ("Greenwell") is the Associate Vice Chancellor for Student Affairs and the Dean of Students, at UC Berkeley. Sutton acted under color of state law, and is sued in his official and personal capacities.

17.    Defendant Margo Bennett ("Bennett") is the Chief of Police for the UCPD, at the UC Berkeley campus. Bennett acts as the ultimate authority for the UCPD at the UC Berkeley campus and



Complaint                                                                                           Case No.

is responsible for UCPD's administration and policy-making, and has ultimate authority to approve the policies and procedures challenged herein that were applied to deprive BCR and YAF of their constitutional rights. Bennett acted under color of state law, and is sued in her official capacity.

18.     Defendant Alex Yao ("Yao") is the Operations Division Captain for the UCPD, at the UC Berkeley campus. Yao acted under color of state law, and is sued in his official and personal capacities.

19.     Defendant LeRoy M. Harris ("Harris") is the Patrol Lieutenant for the UCPD, at the UC Berkeley campus. Harris acted under color of state law, and is sued in his official and personal capacities.

## RELEVANT FACTS

20.     UC Berkeley is a public university, created by the State of California in 1868, and governed by the Regents of the University of California, a California corporation charged with the administration of the University of California as a public trust (Cal. Const., Art. IX, § 9). UC Berkeley is the oldest of California's public research universities, and is considered by many to be the most prestigious public university in the United States.

21.     The Board of Regents Standing Orders 100.4 and 100.6 provide for the delegation of authority for the governance of a campus to each Chancellor. Order 100.6 provides that the Chancellor of each campus "shall be the chief campus officer thereof and shall be the executive head of all activities on that campus," except as otherwise provided by the Standing Order, and that the "Chancellor shall be responsible for the organization and operation of the campus, its internal administration, and its discipline; and decisions made by the Chancellor in accordance with the provisions of the budget and with policies established by the Board or the President of the University shall be final." Accordingly, UC President Napolitano and UC Berkeley Chancellor Dirks act as final policymakers in all matters relating to the setting and application of policies on the UC Berkeley campus, including the policies discussed in this Complaint.

22.     California Code of Regulations § 100000, *et seq.*, provides that persons not affiliated with the University may not participate in specified activities on University property, including any demonstration or gathering, without prior approval from a "Designated University Official," and

6



Complaint                                                                      Case No.

subject to any time, place, and manner requirements the Designated University Official may impose. Section 100001 of the regulations defines a "Designated University Official" as "the University official delegated authority over the relevant operation from the Chancellor or chief administrative officer of the facility."

23.     On information and belief, Chancellor Dirks has, personally or through instruction to persons under his authority, whether formally or informally, whether officially or as a result of permitting such individuals to so act, designated Defendants Sutton, Greenwell, Bennett, Yao, and Harris to act as Designated University Officials for the UC Berkeley campus. Accordingly, Defendants Sutton, Greenwell, Bennett, Yao, and Harris act as final policymakers with respect to creating and enforcing the policies discussed in this Complaint.

**UC Berkeley Cancels BCR's Milo Yiannopoulos Speaking Engagement**

24.     For over a century, UC Berkeley has been a campus well known for its tolerance of various viewpoints. Its welcoming atmosphere, however, has become distinctly more hostile to conservative views in recent years, a trend that accelerated after the 2016 Presidential election.

25.     Prior to February 1, 2017, BCR invited and acquired all necessary approval from appropriate UC Berkeley administrators to host a speaking engagement featuring Milo Yiannopoulos, a contentious conservative writer, speaker, and former senior editor of Breitbart News (the "Milo Event"). The event was scheduled to begin at 8:00 p.m. in Pauley Ballroom on the UC Berkeley campus – a venue more than large enough to accommodate the expected sellout crowd of 500 attendees. The event was widely publicized in the San Francisco Bay area.

26.     In the hours leading up to the Milo Event, dozens of black-clad, masked agitators and demonstrators (self-styled "antifa," short for "anti-fascist"), appearing to act in concert, set fires and threw objects at buildings in downtown Berkeley near the campus to protest Milo Yiannopoulos' appearance.

27.     While UCPD was present on the scene, few arrests were made, and all police officers, including both UCPD and Berkeley city police, appeared to obey a stand-down order that required the officers not to intervene or make arrests in the many physical altercations that occurred between the violent mob and those seeking to attend the Milo Event.

Complaint                                                                                                          Case No.

28.     In a subsequent meeting between BCR representatives, including BCR member Naweed Tahmas, Lt. Harris, and UC Berkeley administrator Millicent Morris Chaney ("Ms. Chaney"), UCPD informed BCR that it was UCPD policy not to intervene in any non-life-threatening situations during the commission of a riot or violent demonstration, such as the violent protest surrounding the canceled Milo Event. In other words, the UCPD has an official "stand-down" policy for *any* altercation it witnesses on campus that does not involve the imminent loss of life.

29.     At approximately 6:00 p.m. on February 1, the University administration announced that the Milo Event was canceled, and as result of the violent demonstration, instituted a nearly campus-wide "lockdown" that was not lifted until approximately 10:55 p.m. on the same evening.

**UC Berkeley Surreptitiously Adopts Unwritten Policy Regarding "High-Profile Speakers"**

30.     On or around March 1, 2017, University administration officials, including UC Berkeley administrators and members of UCPD, met with officials from the City of Berkeley Mayor's Office and the Berkeley Police Department ("Berkeley PD"), to discuss adopting a new policy that would impose more stringent restrictions on events involving "high-profile speakers" (the "High-Profile Speaker Policy"). This unwritten policy ostensibly restricts the time and place of all events involving "high-profile" speakers. Specifically, these events must conclude by 3:00 p.m. (described by University administrators as a "curfew"), and must be held in a "securable" location – also an undefined term. Neither the University, nor Defendants, have set forth the exact nature and scope of the High-Profile Speaker Policy, despite requests from BCR, and have failed to provide any criteria making clear who is considered a "high-profile" speaker under the policy, to whom this policy has been applied since its formation, or what, if anything, renders a particular venue on the UC Berkeley campus "securable." The policy is both amorphous and infinitely malleable.

31.     On April 19, 2017 – several weeks after the High-Profile Speaker policy apparently was adopted – in an email sent to BCR member Naweed Tahmas, copying Captain Yao, UCPD Patrol Lieutenant Harris stated that at the March 1 meeting, the University, UCPD, City of Berkeley, and Berkeley PD "agreed that all events involving high profile [sic] speakers be conducted during daytime hours." Lt. Harris' email does not explain or give guidance concerning what distinguishes a "high-profile" speaker from a non-"high-profile" speaker; what hours during

8

the day a "high-profile" speaker may speak on campus; or what venues would be made available for such speakers. A true and correct copy of this email, with personal contact information redacted, is attached hereto as **Exhibit B**.

32.     UC Berkeley's High-Profile Speaker Policy was not made known to BCR, YAF, or the general student body at the time of its adoption on or around March 1, 2017, or for several weeks thereafter.

**UC Berkeley Applies the Secret High-Profile Speaker Policy
to Cancel the David Horowitz Event**

33.     In February or early March, 2017, BCR began organizing events on the UC Berkeley Campus, with the goal of offering prominent conservative speakers the opportunity to express conservative viewpoints, and to engage in a dialogue with UC Berkeley students and the public about those viewpoints.

34.     Their efforts included BCR contacting YAF to request that YAF sponsor such an event by providing funding and logistical assistance, and by recruiting a conservative speaker. As a result of these efforts, BCR and YAF invited David Horowitz, a prominent conservative writer and frequent speaker on college campuses for decades, to speak on the UC Berkeley campus in mid-April, 2017 ("Horowitz Event").

35.     On March 23, 2017, BCR met with University administrators and UCPD to discuss event logistics and security. Citing undefined safety concerns, UCPD rejected BCR's request that the event be held in room 100 of the Genetics & Plant Biology ("GPB") building on the central UC Berkeley campus.

36.     In an email commemorating the meeting, Ms. Chaney, a Student Organization Coordinator for UC Berkeley, informed BCR that 100 GPB was "not an adequate venue to ensure [Mr. Horowitz's] safety and therefore the campus will seek an alternative room to 100 GPB but ask for flexibility with the start/end times and days of the week so an appropriate venue can be identified before moving forward on the event plans." Ms. Chaney also asked that BCR discuss "what are acceptable ranges of start/end times (ex.: would anytime Tues, 4/11 bet. noon to 6pm or Wed. 4/12 bet. 11am and 6pm work?)," and asked that a representative of BCR be available for a follow-up

9

Complaint

Case No.

conference call with UCPD.

37.     In a March 28, 2017 email, Lt. Harris of the UCPD emailed BCR inquiring if BCR had contacted YAF "to determine the flexibility of lecture times and a contact person to discuss Mr. Horowitz's security requirements."

38.     BCR responded to Lt. Harris' inquiry the same day, confirming the April 12, 2017 4:00-6:00 p.m. time for the event.

39.     On March 29, 2017, BCR again contacted the University to secure a room from 4:00-6:00 p.m. on April 12, 2017, for the Horowitz Event. Marissa Reynoso, Director of the UC Berkeley Student Organization Advising & Leadership Development, stated that she was "trying to get an update" and apologized for the delay.

40.     The following day, March 30, 2017, UCPD's Captain Yao and University administration informed BCR that the Mr. Horowitz could not speak past 3:00 p.m., due to purported security reasons. The UCPD also strongly suggested that BCR and YAF limit attendance at the Horowitz Event to students only, and further strongly recommended that organizers not release the location of the speech to attendees until hours before the event itself. At no time did the Defendants disclose to BCR or YAF that it was enforcing the High-Profile Speaker Policy in connection with the Horowitz Event. Evidently, however, the University's earlier requested "flexibility" was more than a request – it was a mandate enforced pursuant to the unwritten High-Profile Speaker Policy.

41.     On April 6, 2017, Stephen Sutton, UC Berkeley Interim Vice Chancellor for the Division of Student Affairs, entered the conversation and informed BCR member Branden West, and Mr. Horowitz, that the Horowitz Event must be held more than one mile from the center of the UC Berkeley campus, at the Clark Kerr Krutch Theater, and that it must start by at 1:00 p.m., stating in relevant part:

> In the wake of events surrounding the cancelled appearance by Milo Yiannopoulos, law enforcement professionals (UCPD) conducted a comprehensive review of the event's advance planning, security arrangements, and logistical details. Among the findings were two, key points: the timing of an event, as well the location and nature of the venue, can play an important role when it comes to the safety and

Complaint                                                                                    Case No.

security of the speaker, attendees and individuals engaged in lawful protest.

For that reason, UCPD has recommended that the [sic] your upcoming speaking engagement be held at 1:00 pm in the Krutch Theater. These recommendations are based solely and exclusively on UCPD's objective analysis of how best to mitigate risk, ensure safety for all, and maximize the chances that the event will take place as planned. In that context, the campus greatly appreciates recent public comments by representatives of the BCR who offered full support for increased security measures in and around high- profile events featuring potentially controversial speakers.

42.     On April 10, 2017, the University and UCPD informed BCR, for the first time, that BCR and YAF would need to pay a security fee in the amount of $5,788, for the Horowitz Event to proceed a mere six days later. This exorbitant fee, despite the fact that UCPD refuses as a matter of policy to provide actual security by intervening in any violence short of life-threatening bodily harm, and despite the fact that BCR and YAF had agreed to limit attendance to the Horowitz Event to students only.

43.     As a result of Defendants' actions, BCR was forced to cancel the Horowitz Event on April 10, 2017. The enforcement of the High-Profile Speaker Policy unreasonably restricted the Horowitz Event to 1:00-3:00 p.m., during a time when many students are still in class on the main UC Berkeley campus, and required that the event be relegated to a facility far from the central campus making it impractical – if not impossible – for most students to attend in the narrow mid-day time required by the UC Berkeley administration. The fact that attendance at the event was further limited to students only, created a further conundrum for the organizers – who would attend their event during peak class time? In addition, the imposition of the significant security fee by Defendants on a student group six days before an event that few students could now attend, thanks to UC Berkeley's vaguely articulated security concerns and an unwritten policy, rendered it impractical for BCR to host the event, given all the other requirements imposed by Defendants. Accordingly, the Horowitz Event was canceled.

### BridgeCal, YAF, and BCR Invite Ann Coulter to Speak on Campus

44.     BridgeCal is a UC Berkeley chapter for BridgeUSA, a national nonpartisan organization that aims to reinvigorate the practice of open and frank political discussions on university campuses, and to challenge people's opinions through exposure to contrary points of view.

11



Complaint                                                                                    Case No.

45.     On or before early March 2017, BridgeCal, in conjunction with BCR, began planning a speaker series on the topic of illegal immigration. BridgeCal and BCR hoped to engage the student body and the public in a dialogue about the topic of illegal immigration, by providing an opportunity for students to engage directly with both liberal and conservative speakers of prominence.

46.     BridgeCal invited Maria Echaveste, a former advisor and White House Deputy Chief of Staff, to provide a liberal viewpoint on that issue. Ms. Echaveste's appearance was confirmed by BridgeCal on March 17, 2017, and then a venue for her speech was confirmed with the University on March 22, 2017.

47.     BridgeCal sought the assistance of BCR to recruit a conservative speaker to address the same topic within the same month as Ms. Echaveste. As a result of this dialogue between BridgeCal and BCR, BridgeCal approached YAF about supporting the event, and having secured the support commitment, invited Ann Coulter to speak on the UC Berkeley campus, to provide the conservative viewpoint on the topic of illegal immigration as a counterpoint to Ms. Echaveste's remarks.

48.     Ann Coulter is an American conservative social and political commentator, twelve-time, New York Times best-selling author, a syndicated columnist, and a lawyer by training. She frequently appears on television, radio, and as a speaker at public and private events, and has described herself as someone who likes to "stir up the pot" and frequently draws criticism from both liberal and conservative commentators for her polemical views.

49.     On March 17, 2017, BridgeCal member Ross Irwin, in conjunction with and on behalf of BCR and YAF, emailed UC Berkeley Student Organization Coordinator, Ms. Chaney, informing the University that "we believe we have a 50% chance of Ann Coulter coming to speak in the last week of April. The other 50% would be her coming next semester. . . . What do we need to know about security fees and if there are fees for booking large auditoriums like Pauley . . . ." BridgeCal initiated dialogue with UC Berkeley's administrators about the Coulter speaking event ("Coulter Event") on the same day that BridgeCal confirmed Ms. Echaveste's appearance with Ms. Echaveste. A true and correct copy of this email, which was forwarded by Mr. Irwin to BCR member Naweed Tahmas, with personal contact information redacted, is attached hereto as **Exhibit C**.

50.     On March 28, 2017, Ms. Coulter formally accepted BridgeCal, BCR, and YAF's

12



Complaint                                                                                                    Case No.

1   invitation to speak at UC Berkeley on April 27, 2017. As schedule, Ms. Coulter's presentation was to

2   take place eight days after Ms. Echaveste's opening of the student-sponsored speaker series on illegal

3   immigration, a topic of widespread interest to students and the broader University community.

4       51.   On the same day, March 28, 2017, a BCR member and UC Berkeley student, Matt

5   Ronnau, copying BCR member Naweed Tahmas, emailed Ms. Chaney, the UC Berkeley Student

6   Organization Coordinator, informing the University that BCR would be hosting Ms. Coulter in an on-

7   campus speaking engagement on April 27, 2017, during the week initially indicated in BridgeCal's

8   March 17, 2017 email. Mr. Ronnau also stated that BCR had submitted a request for a room that could

9   fit at least 500 people, indicating that "[i]t would be ideal to have Pauley Ballroom or Hertz Hall from

10   7:00-9:00 [p.m.], so just please let me know what we need to do in order to be granted this." A true

11   and correct copy of this email, with personal contact information redacted, is attached hereto as

12   **Exhibit D**.

13       52.   Pauley Ballroom and Hertz Hall are large, centrally located venues on the UC Berkeley

14   campus that are large enough to accommodate the anticipated interest in the Coulter Event. Pauley, for

15   example, holds up to 999 people according to the University's online representations, and Hertz Hall

16   holds up to 678 people for events.

17       53.   On March 29, 2017, BCR and YAF entered into a Contract for Sponsorship of Speaker

18   with Young America's Foundation, obligating YAF to cover a minimum of $13,000 in costs

19   associated with hosting Ms. Coulter on the UC Berkeley campus, including, but not limited to,

20   honorarium, transportation, security, and housing costs for Ms. Coulter and her security team.

21       54.   BCR, YAF, and BridgeCal immediately began preparing for the Coulter Event,

22   including by seeking to secure a venue and security for the event. Ms. Coulter informed BCR and

23   YAF, which in turn notified Defendants, that Ms. Coulter would be accompanied by an additional

24   personal security team.

25   **UC Berkeley Applies the High-Profile Speaker Policy**

26   **to Cancel the Ann Coulter Event**

27       55.   On April 2, 2017, BCR contacted UC Berkeley administrators and UCPD to request a

28   meeting to discuss event logistics and security.

13



Complaint          Case No.

56.     On April 3, 2017, BCR representatives met with representatives of the UC Berkeley administration to discuss event logistics and security.

57.     On April 6, 2017, BCR representatives, Jose Diaz, Naweed Tahmas, and Branden West met UCPD representatives, Captain Yao, Lt. Harris, and University administrators Ms. Chaney and Marissa Reynoso, who, for the first time, disclosed the existence of the unwritten and unpublished High-Profile Speaker Policy, and informed BCR that UC Berkeley would be enforcing this policy in connection with the Coulter Event. UCPD instructed BCR that the event must conclude by 3:00 p.m., and that the University and UCPD would select a "securable" venue on campus. UCPD also informed BCR that if these requirements were not met, the event could not proceed.

58.     At the April 6 meeting, UCPD also strongly encouraged BCR and BridgeCal not to publicly disclose where the speech eventually would take place, and strongly encouraged the groups to restrict attendance at the event to students only, informing them that the University would impose a higher "security fee" on the event if non-students were allowed to attend. In response to BridgeCal's specific request that UCPD issue a statement before the event that UCPD would be on hand to protect the safety of students attending the Coulter Event, so that students would be encouraged to attend, UCPD explicitly declined to do so, stating that the University would not issue any public statement regarding the University's commitment to protecting students from violent protesters at the Coulter Event.

59.     BCR immediately objected to the imposition of the timing and venue constraints on the Coulter Event as unreasonable, and informed UCPD that because classes would be in session at and before 3:00 p.m., it would be extremely difficult, if not impossible, for the event to be held in a sufficiently large room to seat the hundreds of expected attendees, and that holding it during class time would also make it impractical for thousands of students to attend, who might otherwise wish to do so. These concerns would be multiplied if the event were also restricted to students only, unlike many other University speaking events, which are open to University affiliates and community members.

60.     BCR attempted to negotiate an end-time of 5:00 p.m. – four hours earlier than BCR initially requested, and approximately three hours before sunset on April 27, 2017 – but thought this reasonable request complied with Defendants' requirement that the event be held during the daytime, it

14

was rejected by Defendants, without explanation.

61.     On April 10, 2017, BCR met with UC Berkeley administrator Ms. Chaney to discuss event logistics and security, and the imposition of the High-Profile Speaker Policy on the April 27, 2017 Coulter Event.

62.     On April 11, 2017, after being informed that the 3:00 p.m. deadline was non-negotiable, BCR requested a meeting with UC Berkeley Dean of Students Joseph D. Greenwell to further plead its case, and offered to end the event at 4:00 p.m. on April 27. Despite making significant scheduling efforts, BCR was never permitted to speak in-person with Greenwell. Instead, Dean Greenwell merely emailed BCR member Naweed Tahmas, copying Captain Yao, Lt. Harris, Stephen Sutton, and others, expressing that even a 4:00 p.m. end-time would not be permitted, but the 3:30 p.m. end-time was confirmed. A true and correct copy of this email, with personal contact information redacted, is attached hereto as **Exhibit E**.

63.     On April 13, 2017, BCR representatives Naweed Tahmas, Pieter Sittler, and Troy Worden met with a UCPD representative Lt. Harris, and University administrator Ms. Chaney, to discuss the imposition of the University's unreasonable time, place, and manner restrictions on the Ann Coulter speaking engagement. Despite BCR's concession to limit the event to students only, and its reasonable request for an only slightly later end-time of 5:00 p.m, UCPD informed BCR that the 3:30 p.m. end-time was non-negotiable.

64.     At the April 13, 2017 meeting, Lt. Harris expressed that according to UCPD's "research" into Ms. Coulter and the February activity by the violent demonstrators in connection with the canceled Milo Event, Ms. Coulter's speech was likely to spark outrage, giving rise to alleged security threats and justifying the imposition of the curfew.

65.     Based on the UCPD's representations on multiple occasions in the weeks before the Coulter Event, it appears that Defendants do not rely on any objective criteria (e.g. anticipated crowd size, past media attention, number of New York Times best-selling books, status as a current or former head of state, winning of a Nobel Peace Prize, number of campaigns for public office, size of Twitter following, number of television viewers during recent appearances, etc.) to determine whether an invited speaker is considered "high-profile." Instead, Defendants selectively impose their unwritten,

unpublished High-Profile Speaker Policy based on their subjective beliefs that the anticipated content of the speaker's speech is likely to spark "public outrage," as that term is selectively defined by Defendants, thereby triggering "security" concerns and leading to the need to restrict the speaker to a "securable" facility and time of speaking.

66. Based on the selective application of the High-Profile Speaker Policy to date (in the Horowitz Event and Coulter Event situations), it appears that the true aim of the High-Profile Speaker Policy is to make it as difficult as possible for a disfavored speaker to hold a successful event at UC Berkeley, by forcing the event timing to conflict with classes, by requiring that the event take place when large venues are occupied with classes, by requiring that the venue be far from where students are likely to be gathered, and therefore difficult to reach during the narrow window of time allotted during the daytime, by urging that the event not be publicized until just before the event, by restricting the event to students only (the same students who are attending class on the central campus and therefore cannot drive off campus to attend an event that is not publicized until hours before the event), and finally, if those artificial hurdles are not sufficient to accomplish the goal of deterring the event, by imposing a large and last-minute "security fee" on the sponsoring group as the *coup de grace*.

67. The High-Profile Speaker Policy is unconstitutionally vague, and impermissibly affords Defendants absolute discretion in identifying what events and which speakers are subject to the policy.

68. Not surprisingly, by providing Defendants carte blanche to control campus speech, Defendants have been and are enforcing the High-Profile Speaker Policy in a manner that discriminates based on the viewpoint expressed by the speaker and the hosting Registered Student Organization, in violation of BCR and YAF's constitutional rights to free speech, due process, and equal protection. Defendants are further allowing their subjective opinions about the anticipated reactions from critics – including a mob of masked, off-campus, "antifa" – to dictate whether they choose to define a speaker to be subject to the High-Profile Speaker Policy, and thereby impose a host of hurdles to their appearance that do not apply to speakers presumably welcome to the same critical mob (and University administrators).

69. On or around April 17, 2017, Ross Irwin, a representative of BrideCal, copying BCR

Complaint                                                                                                   Case No.

member Naweed Tahmas, emailed UC Berkeley administration and UCPD, confirming the 3:30 p.m., April 27, 2017, end-time for the Coulter Event. A true and correct copy of this email, with personal contact information redacted, is attached hereto as **Exhibit F**.

70.     The following day, April 18, 2017, Dean Greenwell called BCR representative Naweed Tahmas, claiming that the University could not secure a room for the Coulter Event, and that the University was canceling the event due to safety concerns, but that it could be rescheduled for the Fall semester – which was over five months later, and after thousands of students who would otherwise have attended the Coulter Event would have graduated, including the President of the BCR, Jose Diaz. During this conversation, Mr. Tahmas asked Greenwell whether the Coulter Event still would be subject to the curfew and venue restrictions of the High-Profile Speaker Policy if it was rescheduled to the Fall semester, given that Defendants would then have a minimum of five months to prepare. Greenwell admitted that the purported safety concerns would remain equally applicable to the event no matter when the event eventually was held, and therefore BCR and YAF still would be subject to the High-Profile Speaker Policy, even if Ms. Coulter spoke during the Fall semester. In short, despite the University's opportunity to prepare, Ms. Coulter would *never* be afforded the chance to speak to students during the after-class times and central campus locations routinely afforded to "high-profile" but liberal speakers on the campus not subjected to the High-Profile Speaker Policy.

71.     During the April 18 call to Mr. Tahmas, after initially indicating otherwise, Dean Greenwell admitted that the High-Profile Speaker Policy was not in writing, and by extension is not published. This was also confirmed in an April 18, 2017 email from Captain Yao, copying Lt. Harris, UCPD Chief of Police, Bennett, and UC Berkeley administrator, Joseph Greenwell and Ms. Chaney, to Mr. Tahmas. A true and correct copy of this email, with personal contact information redacted, is attached hereto as **Exhibit G**.

72.     As reflected by the negotiations between Plaintiffs and the Defendants, it is apparent that no matter how remote the threat, Defendants will not permit the expression of disfavored conservative viewpoints at desirable places and times on the UC Berkeley campus by subjectively defined "high-profile" speakers.

17

73.    Upon learning that Defendants unilaterally had canceled the event, even after Plaintiffs had acceded to each of the University's unreasonable time, place, and manner restrictions on their constitutionally protected speech in an effort to ensure that the speech went forward on the day Ms. Coulter had been invited, Ms. Coulter publicly disclosed on social media her intention to give a speech at UC Berkeley, despite the Defendants' unconstitutional efforts to restrict the expression of conservative viewpoints on campus.

74.    On April 20, 2017, under mounting pressure from UC Berkeley students, faculty, and staff, and the public, including national media commentators and noted First Amendment lawyers, Ellen Topp, the Interim Chief of Staff for Student Affairs, on behalf of Vice Chancellors Sutton and Scott Biddy, emailed, among others, BCR member Naweed Tahmas, and YAF's Vice President, Patrick Coyle, stating in relevant part:

> Ms. Coulter's announcement that she intends to come to campus on April 27th without regard for the fact that we don't have a protectable venue available on that date is of grave concern. Our police department has made it clear that they have very specific intelligence regarding threats that could pose a grave danger to the speaker, attendees, and those who may wish to lawfully protest the event. At the same time, we respect and support Ms. Coulter's own First Amendment rights.

> Given our serious reservations and concerns regarding Ms. Coulter's stated intentions, last night the Chancellor asked us to look beyond the usual venues we use for large public gatherings to see if there might be a protectable space for this event that would be available during the compressed and extremely busy window of time between now and the end of the academic year.

> Fortunately, that expanded search identified an appropriate, protectable venue that is available **May 2nd, 2017, from 1:00 - 3:00 PM**. While it is not one we have used for these sorts of event in the past, it can both accommodate a substantial audience and meet the security criteria established by our police department. We are directly informing the Coulter organization of this development and we look forward to working with you and them. We will disclose the exact location of the venue to the public once we have finalized details with you and Ms. Coulter. We will be publicly announcing this new date and time today (April 20th) at 12:30 PM.

A true and correct copy of the entire email, with personal contact information redacted, is attached hereto as **Exhibit H**.

75.    As indicated by the University's email, the High-Profile Speaker Policy would

18



1    remain in place for the proposed May 2, 2017 rescheduled event. May 2, 2017 is during what the

2    University refers to as a "dead week" in which no classes are held on campus, and students are

3    encouraged to prepare for final examinations, which immediately follow the dead week. Many

4    students leave the campus altogether during this week, as they have no classes requiring their

5    attendance, and they prefer to study for finals off campus, without distractions.

6        76.    Because of the dead week timing (including the mid-day "curfew" scheduling), many

7    students who otherwise would have been available to attend the Coulter Event could not do so on

8    May 2, 2017, the date proposed by Defendants. Accordingly, BCR and YAF rejected Defendants'

9    transparent attempt to save face because the proposed date could not accomplish BCR and YAF's

10   stated purpose for the event of exposing students to conservative viewpoints on illegal immigration.

11           **UC Berkeley's Discriminatory Application of its High-Profile Speaker Policy**

12       77.    Despite Defendants' discriminatory application of the High-Profile Speaker Policy to

13   BCR and YAF-hosted events, Defendants routinely allow nationally renowned speakers on campus

14   to express non-conservative viewpoints after 3:00 p.m., at on-campus venues capable of hosting

15   hundreds of students and members of the public, and without limiting their appearances to a single,

16   two-hour period in a calendar year, when students are not on campus for scheduled classes.

17       78.    For example, on April 17, 2017, Vicente Fox Quesada, the former president of

18   Mexico, was permitted to speak on campus at 4:00 p.m. to hundreds of people, without incident or

19   interference from Defendants.

20       79.    On the same day, April 17, BridgeCal successfully hosted the first event of its

21   planned two-speaker series, featuring Maria Echaveste, former presidential advisor and White

22   House Deputy Chief of Staff to President Bill Clinton, who was permitted to speak at a central

23   location on campus from 6:45 p.m. to 8:00 p.m., without incident or interference from Defendants.

24       80.    BCR and YAF are unaware of *any* prominent non-conservative speaker to which any

25   UC Berkeley officials, including Defendants, have applied the High-Profile Speaker Policy, nor any

26   non-conservative speaker that has had to cancel an appearance as a result of Defendants' persistent

27   interference, including but not limited to their unreasonable time, place, and manner restrictions on

28   the speech.

Complaint                                                                                        Case No.

81.     Over the course of the nearly four weeks of discussions regarding the Coulter Event, Defendants began raising more and more issues about the event, and piling on more arbitrary restrictions, as the event approached. Initially, University officials indicated that multiple on-campus venues would be available, including:

      a.     Booth Auditorium (stated to be available April 27, 2017);

      b.     Anderson Auditorium;

      c.     Zellerbach Auditorium;

      d.     Dwinelle 155 (stated to be available the evening of April 27, 2017);

      e.     Valley Life Sciences Building, Room 2050;

      f.     Haas Faculty Wing, Room F295; and

      g.     Memorial Stadium (stated to be available April 27, 2017).

82.     After offering and discussing all of the above potential venues with BCR and YAF, Defendants suddenly announced to BCR, YAF, and BridgeCal the imposition of the newly adopted High-Profile Speaker Policy, unreasonably restricting the time and place at which Ms. Coulter could speak. After initially canceling the event, the University and Defendants offered a purported alternative date – that effectively relegated the event out of existence.

83.     Following BCR and YAF's rejection of the sham alternative date of May 2, the University and Defendants have maliciously and publicly made numerous false statements about the series of events leading up to their unilateral cancellation of the Coulter Event, falsely indicating that the University only learned that Ms. Coulter would be speaking on campus through the press, and that BCR had failed to provide four weeks' notice that the event would be held on the University campus.

84.     These representations are categorically false. As described above, the University and Defendants were provided with ample notice, no less than six weeks prior to the event, and BCR provided the University with confirmed date of April 27, 2017, on March 28, 2017, more than four weeks prior to the event, which is documented by email communications between BridgeCal, BCR, YAF and University officials.

85.     The University has attempted to bully BCR and BridgeCal out of holding the Coulter



Complaint                                                                  Case No.

Event at all, by escalating the arbitrary requirements on the event, concealing the High-Profile Speaker Policy until shortly before the University's cancellation, and concealing their true intentions behind a smokescreen of platitudes and misrepresentations. The High-Profile Speaker Policy, with its infinitely malleable "securable location" parameters, ensures that University officials can pick and choose which speech to permit, and then justify their illegitimate censorship by pointing to their unwritten and unconstitutional policy.

86.     In addition to substituting their private speech criteria for the free speech requirements mandated by the Constitution, University officials concede that they allow the tastes and criminal actions of a masked mob to define who they allow to speak at U.C. Berkeley. In a letter dated April 21, 2017 to legal counsel for YAF and BRC, Campus Counsel Christopher M. Patti admitted to Harmeet K. Dhillon that UC Berkeley's decision to cancel the Coulter Event was triggered by a "security assessment" by the UCPD which revealed "mounting intelligence that some of the same groups that previously engaged in local violent action also intended violence at the Coulter Event." Mr. Patti appears to be referring to the so-called "antifa" groups from outside the campus indulging in violence at Berkeley to silence conservatives gathering in or around the UC Berkeley campus – who appear to have more power and rights on the campus than students showing their faces, paying tuition, and seeking a balanced educational environment at a publicly-funded institution of higher learning.

87.     Defendants have employed a purposeful and concerted effort to stifle the expression of conservative viewpoints on campus by discriminatorily imposing the High-Profile Speaker Policy on BCR- and YAF-sponsored speakers. Defendants could have taken appropriate security measures to ensure the safety of those attending conservative speaking engagements – as is their duty to all students on campus – but they have refused to do so. Defendants could have insisted that the Berkeley Police Department do its job of keeping the public and University students and speakers safe, if the taxpayer-funded UCPD is incapable of or refuses to perform its duties on campus. Instead, Defendants punt the issue of who, when, and where one may express conservative viewpoints on campus to their own whims and the whims of the "antifa" mob which, inexplicably, has been allowed free rein by the Berkeley Police Department and UCPD.

88.     The University's subjugation to a heckler's veto of BCR and YAF's freedom to

Complaint                                                                                              Case No.

engage in constructive political discourse, as admitted by Chief Campus Counsel Patti, violates the First and Fourteenth Amendments to the U.S. Constitution, and must not stand.

89.    At all times relevant to this Complaint, each of the acts and policies related to Defendants alleged herein were attributed to Defendants, who acted under color of a statute, regulation, custom, or usage of the State of California.

90.    Defendants knew or should have known that they were violating Plaintiffs YAF and BCR's well-settled constitutional rights by enforcing the High-Profile Speaker Policy based upon the viewpoint to be expressed at the Horowitz and Coulter events.

91.    Defendants knew or should have known that by enforcing the unwritten, High-Profile Speaker Policy against YAF and BCR because Defendants and/or an expected antifa mob disagreed or may disagree with the viewpoint of YAF and BCR's speech, Defendants violated YAF and BCR's well-settled constitutional rights.

92.    Defendants knew or should have known that by allowing the violent, hateful demands of a masked mob of outside agitators to silence certain speech on campus based solely on its content, Defendants violated YAF and BCR's well-settled constitutional rights.

93.    YAF and BCR have suffered and continue to suffer irreparable harm from the enforcement of Defendants' High-Profile Speaker Policy.

94.    YAF and BCR have no adequate or speedy remedy at law to correct or redress the deprivation of its rights by Defendants.

95.    Unless the High-Profile Speaker Policy is enjoined, YAF and BCR will continue to suffer irreparable injury.

## FIRST CLAIM FOR RELIEF

**Violation of the First Amendment Right to Freedom of Expression (42 U.S.C. § 1983)**

**(By YAF and BCR Against All Defendants)**

96.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

97.    UC Berkeley expressly permits BCR, a Registered Student Organization, to bring speakers of its choosing to speak on campus. YAF is a sponsor and financial contributor to BCR's



efforts to bring Mr. Horowitz and Ms. Coulter to UC Berkeley, among other sponsorship and support of BCR's programming.

98.  Applicable venues for speaking engagements accessible for use by BCR and YAF are designated public forums or limited public forums.

99.  Defendants, acting under color of state law and according to a pattern and practice, have enacted the unwritten or unpublished High-Profile Speaker Policy, and engaged in viewpoint discrimination by selectively enforcing the policy's unreasonable time, place, and manner restrictions on BCR and YAF, with the effect of marginalizing or banning the expression of conservative viewpoints on the UC Berkeley campus.

100.  Defendants' imposition of the High-Profile Speaker Policy is unreasonable and has a chilling effect on protected speech, by subjecting events with "high-profile" speakers to unreasonable time and venue constraints, and by affording Defendants absolute discretion to enforce these restrictions according to their whim and taste, or the demands of an off-campus mob.

101.  The High-Profile Speaker Policy is unconstitutionally vague, and therefore void as a matter of law, both on its face, and as it is applied.

102.  As a direct and proximate consequence of Defendants' violations of BCR and YAF's federal civil rights under 42 U.S.C. § 1983 and the First Amendment, BCR and YAF have suffered and will suffer irreparable injury that cannot fully be compensated by an award of monetary damages.

103.  Pursuant to 42 U.S.C. §§ 1983 and 1988, BCR and YAF are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the High-Profile Speaker Policy. Additionally, BCR and YAF are entitled to monetary damages arising from the unconstitutional actions of Defendants Dirks, Sutton, Greenwell, Yao, and Harris, sued herein in their individual capacities, as well as reasonable costs of suit.

104.  Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

//

## SECOND CLAIM FOR RELIEF

### First Amendment Retaliation (42 U.S.C. § 1983)

### (By BCR Against All Defendants)

105.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

106.    BCR and its members have engaged in constitutionally protected speech, namely, holding and expressing conservative viewpoints by inviting conservative speakers to speak on the UC Berkeley campus, including Milo Yiannopoulos, David Horowitz, and Ann Coulter.

107.    By treating BCR and its members differently from similarly situated students, student organizations, and members of the public because they are conservative and because of their conservative beliefs, among other things, Defendants, acting under color of state law and according to policy and practice, have engaged in actions that retaliate against BCR and its members for holding and expressing disfavored views, and in so retaliating, have engaged in conduct that would chill a person of ordinary firmness from continuing to engage in the protected speech activity.

108.    BCR and its members' actions in holding and expressing disfavored views was a substantial and motivating factor in Defendants' retaliation against them by imposing unlawful restrictions on BCR and its members' federal civil rights under 42 U.S.C. § 1983 and the First Amendment, causing BCR to suffer and continue in the future to suffer irreparable injury that cannot be fully compensated by an award of monetary damages.

109.    Pursuant to 42 U.S.C. §§ 1983 and 1988, BCR is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining Defendants' retaliation against BCR and its members for their utterances of protected speech. Additionally, BCR is entitled to monetary damages arising from the unconstitutional actions of Defendants Dirks, Sutton, Greenwell, Yao, and Harris, sued herein in their individual capacities, as well as reasonable costs of suit.

110.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

Complaint

Case No.

1

2

3

**THIRD CLAIM FOR RELIEF**

**Violation of the Fourteenth Amendment Right to Due Process (42 U.S.C. § 1983)**

**(By YAF and BCR Against All Defendants)**

4       111.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully

5   set forth herein.

6       112.    Defendants, acting under color of state law and according to a pattern and practice, have

7   enacted the unwritten and/or unpublished High-Profile Speaker Policy, which is vague, overbroad, and

8   improperly affords Defendants absolute discretion in its application, and therefore deprives BCR and

9   YAF of their clearly established due process rights guaranteed by the Fourteenth Amendment to the

10  United States Constitution.

11      113.    As a direct and proximate consequence of Defendants' violations of BCR and YAF's

12  federal civil rights under 42 U.S.C. § 1983 and the Fourteenth Amendment, BCR and YAF have

13  suffered and will suffer irreparable injury that cannot fully be compensated by an award of monetary

14  damages.

15      114.    Pursuant to 42 U.S.C. §§ 1983 and 1988, BCR and YAF are entitled to declaratory

16  relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining

17  enforcement of the High-Profile Speaker Policy. Additionally, BCR and YAF are entitled to monetary

18  damages arising from the unconstitutional actions of Defendants Dirks, Sutton, Greenwell, Yao, and

19  Harris, sued herein in their individual capacities, as well as reasonable costs of suit.

20      115.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their

21  rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42

22  U.S.C. § 1988.

23

24

25

**FOURTH CLAIM FOR RELIEF**

**Violation of the Fourteenth Amendment Right to Equal Protection (42 U.S.C. § 1983)**

**(By YAF and BCR Against All Defendants)**

26      116.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully

27  set forth herein.

28      117.    By treating BCR, its members, and YAF differently from similarly situated students,

25



Complaint                                                                                                Case No.

student organizations, and members of the public because they are conservative and because of their conservative beliefs, among other things, Defendants, acting under color of state law and according to policy and practice, have engaged in actions that discriminate on the basis of political status and belief and have therefore deprived BCR and YAF of their clearly established equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution.

118.    As a direct and proximate consequence of Defendants' violations of BCR and YAF's federal civil rights under 42 U.S.C. § 1983 and the Fourteenth Amendment, BCR and YAF have suffered and will suffer irreparable injury that cannot be fully compensated by an award of monetary damages.

119.    Pursuant to 42 U.S.C. §§ 1983 and 1988, BCR and YAF are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the High-Profile Speaker Policy. Additionally, BCR and YAF are entitled to monetary damages arising from the unconstitutional actions of Defendants Dirks, Sutton, Greenwell, Yao, and Harris, sued herein in their individual capacities, as well as reasonable costs of suit.

120.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following:

i.    For compensatory and punitive damages against Defendants Dirks, Sutton, Greenwell, Yao, and Harris, sued in their individual capacities, on all claims, to the fullest extent permitted by law;

ii.    For a judicial declaration that Defendants have violated BCR and YAF's constitutional rights under the First and Fourteenth Amendment, by selectively enforcing the High-Profile Speaker Policy against BCR and YAF, which unreasonably restricts the time, place, and manner of political speech, and has resulted in the burdening and even banning of expression of conservative viewpoints on the UC Berkeley campus;

iii.    For temporary, preliminary, and permanent injunctive relief, enjoining Defendants

DHILLON LAW GROUP INC.

from: applying any unwritten or unpublished policy restricting the exercise of political expression on the UC Berkeley campus; selectively enforcing the High-Profile Speaker Policy against BCR and YAF; and unilaterally canceling any speaking event hosted by BCR and/or YAF scheduled in compliance with written, published University policies that comport with constitutional requirements for protected speech, due process, and equal protection.

       iv.     For an award of attorneys' fees incurred in bringing this Action against Defendants, pursuant to 42 U.S.C. § 1988.

       v.     For costs of suit incurred herein; and

       vi.     For such other and further relief as the Court deems just and proper.

Date: April 24, 2017               DHILLON LAW GROUP INC.


                     By: /s/ Harmeet K. Dhillon
                         HARMEET K. DHILLON (SBN: 207873)
                         harmeet@dhillonlaw.com
                         KRISTA L. BAUGHMAN (SBN: 264600)
                         kbaughman@dhillonlaw.com
                         GREGORY R. MICHAEL (SBN: 306814)
                         gmichael@dhillonlaw.com
                         DHILLON LAW GROUP INC.
                         177 Post Street, Suite 700
                         San Francisco, California 94108
                         Telephone: (415) 433-1700
                         Attorneys for Plaintiffs Young America's Foundation
                         and Berkeley College Republicans



Complaint                                                 Case No.

1

**DEMAND FOR JURY TRIAL**

2          Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs Young America's

3   Foundation and Berkeley College Republicans demand trial by jury on all claims in this action of all

4   issues so triable.

5   Date: April 24, 2017                                  DHILLON LAW GROUP INC.

6
                                                  By: /s/ Harmeet K. Dhillon
7                                                      HARMEET K. DHILLON (SBN: 207873)
                                                       harmeet@dhillonlaw.com
8                                                      DHILLON LAW GROUP INC.
                                                       177 Post Street, Suite 700
9                                                      San Francisco, California 94108
                                                       Telephone: (415) 433-1700
10                                                     Attorneys for Plaintiffs Young America's Foundation
11                                                     and Berkeley College Republicans

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28



Complaint                                                                                 Case No.

**VERIFICATION OF COMPLAINT**

I, Patrick Coyle, declare as follows:

1.     I am a citizen of the United States of America, and a resident of the Commonwealth of Virginia. I serve as Vice President of Young America's Foundation ("YAF"), a Plaintiff in this Action.

2.     I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Complaint, and if called on to testify I would competently testify as to the matters stated herein.

3.     As an officer of YAF, I have personal knowledge of YAF's activities, and their intentions, including those set out in the foregoing Complaint, and if called on to testify I would competently testify as to the matters stated herein.

4.     On all other matters stated in the Complaint, I am informed and believe them to be true.

5.     I verify under penalty of perjury under the laws of the United States of America that I have read the foregoing Complaint and the factual allegations concerning myself, my activities, my intentions, and YAF's activities and intentions therein, and the facts as alleged are true and correct.

Executed on April 24, 2017.



Patrick Coyle



Complaint                                                                 Case No.

**VERIFICATION OF COMPLAINT**

I, Naweed Tahmas, declare as follows:

1.       I am a citizen of the United States of America, and a resident of the State of California. I am a member of Berkeley College Republicans ("BCR"), a Plaintiff in this Action.

2.       I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Complaint, and if called on to testify I would competently testify as to the matters stated herein.

3.       As a member of BCR, I have personal knowledge of BCR's activities, and its intentions, including those set out in the foregoing Complaint, and if called on to testify I would competently testify as to the matters stated herein.

4.       On all other matters stated in the Complaint, I am informed and believe them to be true.

5.       I verify under penalty of perjury under the laws of the United States of America that I have read the foregoing Complaint and the factual allegations concerning myself, my activities, my intentions, and BCR's activities and intentions therein, and the facts as alleged are true and correct.

Executed on April 23, 2017.



DocuSigned by:

68A989B3911747F...

Naweed Tahmas



Complaint                                                                                                          Case No.